LIVE YANKEE. The (ADRIAN v.). See Case No. 88.

LIVE YANKEE. The (GODDEFROY v.). See Case No. 5,496.

----

## Case No. 8,410.

### LIVINGSTON et al. v. BRUCE.

[1 Blatchf. 318.] [1]

Circuit Court, N. D. New York. June Term. 1848.

BANKRUPTCY—FRAUDULENT PREFERENCES — LIEN OF JUDGMENT.

1. A judgment was recovered by L. against A., which became a lien on real estate of his of sufficient value to satisfy the judgment. Subsequently, A. assigned all his property to B., in trust for the payment of his debts, preferring L. over all other creditors. B. made payments on the judgment out of the personal property assigned, and the balance due on it was paid by a sale of the real estate on execution. Afterwards A. was declared a bankrupt under the act of congress of August 19, 1841 (5 Stat. 440), and J., having been appointed his assignee, brought an action against L. to recover back the money paid by B.: Held, that the action could not be maintained.

2. The lien of the judgment was saved by the proviso in section 2 of the bankrupt act.

3. Even though the voluntary assignment was void under the act, as having been made in contemplation of bankruptcy, no fraudulent preference can be predicated upon the payments made on the judgment, because the payment of it had become matter of legal right according to the act itself, the property charged being greater in value than the demand.

4. It makes no difference whether the payments were made by the voluntary assignee or by the bankrupt, because the rights of the general cred-

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

itors and of the judgment creditor are to be regarded in the same light as if no assignment had been made.

[In error to the district court of the United States for the Northern district of New York.]

On the 24th of December, 1841, [Van Vechten] Livingston and [Truman K.] Butler, of Utica, recovered a judgment against Adin Burdick, of Brookfield, for $1,897 74, which became on that day a lien on real estate of the debtor of sufficient value to satisfy the judgment. On the 4th of May, 1842, Adin Burdick made an assignment of all his property to Benjamin Burdick, in trust for the payment of his debts, preferring the debt to Livingston & Butler over all others. The assignee, on the 25th of May, 1842, informed Livingston & Butler of the assignment and of the preference in favor of their judgment, and on that day and various other days down to the 11th of July, 1842, he paid them the sum of $383 02 in all, which was applied on the judgment. On the 27th of July, 1842, an execution was issued on the judgment. Between that time and the 31st of October following, the assignee paid to Livingston & Butler $158 61 more, which was also applied on the judgment. On the 17th of September, 1842, certain creditors of Adin Burdick presented their petition to the district court, under the general bankrupt act of August 19, 1841 (5 Stat. 440), to have him declared a bankrupt. On the 9th of January, 1843, sufficient real estate was sold on the execution to satisfy the balance due on the judgment, and on the 5th of April, 1843, Adin Burdick was declared a bankrupt, and [Joseph] Bruce was appointed his assignee. In May, 1844, Bruce brought an action of assumpsit in the district court against Livingston & Butler, to recover the monies paid to them by the voluntary assignee, as having been paid in contemplation of the bankruptcy of the assignor and by way of fraudulent preference over his other creditors. The plaintiff had a verdict, and, after judgment, the defendants brought the case to this court by writ of error.

Hiram Denio and Willard Crafts, for plaintiffs in error.

Joshua A. Spencer, for defendant in error.

NELSON, Circuit Justice. It was proved on the trial that the real estate on which Livingston & Butler's judgment was a lien, was of sufficient value to satisfy it. The demand in question was therefore amply secured on the property of the debtor before he was declared a bankrupt. Such security was saved from the bankrupt act and from the proceedings under it, by the proviso in the second section of that act. The voluntary assignee took the estate under the assignment to him, subject to this charge. Moreover, aside from the bankrupt act, the preference given to the judgment and the payments made in pursuance thereof were legal and valid. The judgment had secured the priority. And, if we assume the voluntary assignment to be void and inoperative under the act, as having been made in contemplation of bankruptcy, the result is the same and for precisely the same reason. There can be no fraudulent preference predicated on the several payments made upon the judgment, because the payment of it had become matter of legal right according to the bankrupt act itself, the property charged being greater in value than the demand. It would be strange to hold the payment of a debt by a bankrupt to be a fraudulent preference within the meaning of the act, when it operated to discharge, for the benefit of his general creditors, an amount of property equal in value to the sum paid. It is true that in this case the voluntary assignee, after making payments on the judgment to the amount of between five and six hundred dollars, stopped, and the judgment creditors caused the balance to be satisfied by a sale of the real estate. But they were not bound to await the proceedings under the bankrupt act. These in no way affected their security. The previous payments diminished, by a corresponding amount, the charge on the real estate of the bankrupt, and if the petitioning creditors, (the sale having taken place before the appointment of the assignee,) had chosen to bid in the property for the benefit of the general creditors, the amount they would have been obliged to pay would have been calculated on a deduction of those previous payments.

The principle which must govern this case is well settled in England. In Thompson v. Beatson, 1 Bing. 145, payment to a bankrupt of a debt to a creditor, on his giving up a lien on a ship and her cargo, was upheld, and in Mavor v. Croome, Id. 261, payment by a bankrupt of rent due was sustained, as the landlord had a right of distress and of re-entry which were waived by the receipt of the rent. In Marshall v. Lamb, 5 Adol. & El. (N. S.) 115, Lord Denman, referring to this principle, observed, that if the property covered by the mortgage in that case had belonged to the bankrupt, the payment by him would not have been a fraudulent preference, because the assignees would have had the mortgaged property, and it was indifferent to them whether they had the property free from the mortgage, (supposing it to exceed in value the amount of the mortgage,) or the property subject to the mortgage and the amount of the mortgage money in cash. But, the mortgaged property was not the bankrupt's, and, for that reason, the payment was held to be a fraudulent preference within the act. Mr. Justice Patteson observed, in the same case, that where the creditor had a lien on property of the debtor, there was no fraudulent preference in paying money to discharge it, because the assignees, to recover the property, must do

the same. Eden, Bankr. Law, 263, 266, 290.

It was said on the argument that the judgment creditors could look only to the property charged, and that the payments out of the personalty amounted to a fraudulent preference. But, it was a matter of indifference to the other creditors which fund was applied, provided the property charged exceeded in value the demand. And, besides, according to the case of Mavor v. Croome, the payments out of the personal property did not amount to a fraudulent preference, inasmuch as the judgment creditors could issue execution and levy on it at any time. The cases before referred to and the principle upon which they are founded assume that the payments have been made out of property of the bankrupt other than that specifically charged with the debt.

It can make no difference whether the payments be made by the bankrupt himself or by his voluntary assignee. The effect is the same, both as regards the estate of the bankrupt and the general creditors. The assignment neither prejudiced the rights of Livingston & Butler in respect to the former, nor did it give any new rights to the latter. Both are to be regarded in the same light as if no assignment had been made, and every thing done by the voluntary assignee had been done by the bankrupt himself. Judgment reversed.